Slip Op. 12-92

UNITED STATES COURT OF INTERNATIONAL TRADE

NAN YA PLASTICS CORPORATION, AMERICA,

                              Plaintiff,

          v.

UNITED STATES OF AMERICA, UNITED STATES CUSTOMS AND BORDER PROTECTION, DAVID V. AGUILAR (ACTING COMMISSIONER, UNITED STATES CUSTOMS AND BORDER PROTECTION), UNITED STATES INTERNATIONAL TRADE COMMISSION, AND DEANNA T. OKUN (CHAIRMAN, UNITED STATES INTERNATIONAL TRADE COMMISSION),

                              Defendants.

Before: Gregory W. Carman, Judge
        Timothy C. Stanceu, Judge
        Leo M. Gordon, Judge

Court No. 08-00138

**OPINION**

[Dismissing all claims for failure to state a claim upon which relief can be granted; dismissing the action.]

Dated: July 12, 2012

        J. Kevin Horgan, deKieffer & Horgan, of Washington, DC, for Plaintiff Nan Ya Plastics Corporation, America.

        Jessica R. Toplin, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendants United States, U.S. Customs and Border Protection, and David V. Aguilar, Acting Commissioner of U.S. Customs and Border Protection.  With her on the briefs were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, and David S. Silverbrand and Courtney S. McNamara, Trial Attorneys.  Of counsel on the briefs were Andrew G. Jones and Joseph Barbato, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of Washington, DC.

Patrick V. Gallagher, Jr., Attorney Advisor, Office of General Counsel, U.S. International Trade Commission, of Washington, DC for Defendants U.S. International Trade Commission and Deanna T. Okun, Chairman, U.S. International Trade Commission.  With him on the briefs were James M. Lyons, General Counsel and Neal J. Reynolds, Assistant General Counsel.

Gordon, Judge:  This case arose from the actions of two agencies, the U.S. International Trade Commission (the "ITC" or the "Commission") and U.S. Customs and Border Protection ("Customs" or "CBP"), that denied Plaintiff, Nan Ya Plastics Corporation, America ("Nan Ya"), certain monetary benefits under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c (2000), repealed by Deficit Reduction Act of 2005, Pub. L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).  The ITC did not include Plaintiff on a list of parties potentially eligible for "affected domestic producer" ("ADP") status, which potentially would have qualified Nan Ya for distributions of antidumping duties collected under antidumping duty orders on imports of certain polyester staple fiber ("PSF") from the Republic of Korea and Taiwan.  Certain Polyester Staple Fiber from Korea and Taiwan, Inv. No. 731-TA-825-826 (Final), USITC Pub. 3300 (May 2000); Notice of Amended Final Determination of Sales at Less Than Fair Value: Certain Polyester Staple Fiber from the Republic of Korea and Antidumping Duty Orders: Certain Polyester Staple Fiber from the Republic of Korea and Taiwan, 65 Fed. Reg. 33,807 (Dep't of Commerce May 25, 2000) ("Final LTFV Determination and Antidumping Duty Orders").  Because Plaintiff was not on the ITC's list of potential ADPs, Customs made no CDSOA distributions to Nan Ya.

Plaintiff claims that Defendants' actions are inconsistent with the CDSOA, not supported by substantial evidence, and otherwise not in accordance with law.  Plaintiff also brings facial and as-applied constitutional challenges to the CDSOA under the First Amendment and the equal protection and due process guarantees of the Fifth Amendment.

Before the court are motions under USCIT Rule 12(b)(5) to dismiss for failure to state a claim upon which relief can be granted, filed by the ITC (Def. U.S. Int'l Trade Comm'n's Mot. to Dismiss for Failure to State a Claim upon Which Relief can be Granted, ECF No. 49 ("ITC's Mot.")) and Customs (Defs. the United States and U.S. Customs and Border Protection's Mem. in Supp. of the Mot. to Dismiss for Failure to State a Claim, ECF No. 47 ("Customs' Mot.")).  The court has jurisdiction pursuant to 28 U.S.C. § 1581(i) (2006).  See Furniture Brands Int'l, Inc. v. United States, 35 CIT __, __, 807 F. Supp. 2d 1301, 1307-10 (2011) ("Furniture Brands I").  For the reasons set forth below, we conclude that Plaintiff's claims must be dismissed for failure to state a claim upon which relief can be granted.  The court will grant Defendants' USCIT Rule 12(b)(5) motions and dismiss this action.

## I. Background

Following a 1999 petition filed by a group of domestic manufacturers, including Plaintiff, the U.S. Department of Commerce ("Commerce") initiated an antidumping investigation of PSF from the Republic of Korea and Taiwan.  Initiation of Antidumping Duty Investigations: Certain Polyester Staple Fiber From the Republic of Korea and Taiwan, 64 Fed. Reg. 23,053 (Dep't of Commerce Apr. 29, 1999); Sec. Am. Compl.

¶ 21, ECF No. 46.  The ITC conducted an injury investigation.  <u>Certain Polyester Staple Fiber from Korea and Taiwan</u>, 64 Fed. Reg. 17,414 (ITC Apr. 9, 1999); Sec. Am. Compl. ¶ 21.  Shortly thereafter, on May 4, 1999, Nan Ya withdrew as a petitioner as to Korea. <u>See</u> <u>Certain Polyester Staple Fiber from Korea and Taiwan (Review)</u>, USITC Pub. 3483 at I-6 n.5 (Mar. 2006); Sec. Am. Compl. ¶ 22.[1]  As part of its investigation, the ITC sent questionnaires to the domestic industry that asked domestic producers, including Nan Ya, to, <u>inter alia</u>, identify their position regarding the petition by checking one of three boxes indicating either support, opposition, or no position.  Plaintiff filed a response but did not check the box indicating support for the petition on the ITC's final phase questionnaire. <u>Id.</u> ¶ 23.

Following an affirmative injury determination on PSF by the ITC in May 2000, Commerce, on May 25, 2000, published its amended final determinations of sales at less than fair value and issued the antidumping duty orders covering the subject merchandise.  <u>Final LTFV Determination and Antidumping Duty Orders</u>**,** 65 Fed. Reg. 33,807; Sec. Am. Compl. ¶ 25.  The antidumping duty orders remain in effect.  Sec. Am. Compl. ¶ 25.

Plaintiff brought this action on April 18, 2008, contesting the denial of CDSOA distributions to Plaintiff for Fiscal Years 2006 and 2007.  <u>Id.</u> ¶ 6.  Shortly thereafter, the court stayed this action pending a final resolution of other litigation raising the same or similar issues. Order May 28, 2008, ECF No. 11 (action stayed "until final resolution of

---

[1] Nan Ya was only a petitioner as to the Republic of Korea and not as to Taiwan.  Thus, upon its withdrawal, Nan Ya was "no longer a petitioner against either country."  Sec. Am. Compl. ¶ 22.

Pat Huval Restaurant & Oyster Bar, Inc. v. United States, Consol. Ct. No. 06-0290, that

is, when all appeals have been exhausted.").

Following the decision of the U.S. Court of Appeals for the Federal Circuit ("Court

of Appeals") in SKF USA Inc. v. United States, 556 F.3d 1337 (2009) ("SKF"), cert.

denied, 130 S. Ct. 3273 (2010),[2] which addressed questions also present in this action,

the court issued an order directing Plaintiff to show cause why this action should not be

dismissed.  Order to Show Cause, Jan. 3, 2011, ECF No. 15.  After receiving Plaintiff's

response, the court lifted the stay on this action for all purposes. Order Lifting Stay,

Feb. 9, 2011, ECF No. 219.   On May 5, 2011, Plaintiff filed its Second Amended

Complaint, seeking CDSOA disbursements for Fiscal Years 2006, 2007, and

subsequent fiscal years.  See Sec. Am. Compl., Prayer for Relief.  Defendants filed

motions to dismiss for failure to state a claim upon which relief can be granted on May

24, 2011 (ITC's Mot.) and May 5, 2011 (Customs' Mot.).

## II.  Standard of Review

In deciding a USCIT Rule 12(b)(5) motion to dismiss for failure to state a claim

upon which relief can be granted, the court assumes all factual allegations to be true

and draws all reasonable inferences in the plaintiff's favor.  Cedars-Sinai Med. Ctr. v.

Watkins, 11 F.3d 1573, 1583-84 & n.13 (Fed. Cir. 1993); Gould, Inc. v. United States,

935 F.2d 1271, 1274 (Fed. Cir. 1991).

---

[2] SKF reversed the decision of the Court of International Trade in SKF USA Inc. v.
United States, 30 CIT 1433, 451 F. Supp. 2d 1355 (2006), which held the CDSOA
requirement that limited affected domestic producer status to interested parties in
support of the petition unconstitutional on Fifth Amendment equal protection grounds.

A plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

### III. Discussion

In 2000, Congress amended the Tariff Act of 1930 to add section 754, the CDSOA, which provides distributions of assessed antidumping and countervailing duties to ADPs on a fiscal year basis. 19 U.S.C. § 1675c(d)(1).[3] ADP status is available only to a party who "was a petitioner or interested party in support of a petition with respect to which an antidumping duty order, a finding under the Antidumping Duty Act of 1921, or a countervailing duty order was entered." Id. § 1675c(b)(1). The CDSOA directed the ITC to forward to Customs, within sixty days of the issuance of an antidumping or countervailing duty order, lists of persons potentially eligible for ADP status, i.e., "petitioners and persons with respect to each order and finding and a list of persons that indicate support of the petition by letter or through questionnaire

---

[3] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as if [the CDSOA] . . . had not been repealed . . . ." Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006). In 2010 Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation from the Department of Commerce." Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3163 (2010).

response." Id. § 1675c(d)(1). Customs publishes the lists of potential ADPs in the Federal Register annually, prior to each distribution. Id. § 1675c(d)(2). Customs distributes assessed duties to parties on the list of potential ADPs that certify that they meet the remaining eligibility criteria. Id. § 1675c(d)(2).

The ITC compiled lists of potential ADPs with respect to the antidumping duty orders on PSF, which lists it then provided to Customs. Sec. Am. Compl. ¶ 27. Customs published the lists of potential ADPs for Fiscal Year 2006 on June 1, 2006, and for Fiscal Year 2007 on May 29, 2007. Id. ¶¶ 32, 33. Plaintiff did not appear on either list. Id. ¶¶ 27, 32, 33. Nevertheless, Plaintiff certified to Customs its eligibility for both fiscal years based on "developing case law." Id. ¶ 34. Customs responded by indicating that Nan Ya was allocated CDSOA funds for Fiscal Year 2007 on the subject antidumping duty orders but that the disbursement of those funds was being withheld pending the disposition of pending litigation over the Byrd Amendment. Id. ¶ 36. Plaintiff also filed a letter with the ITC seeking formal certification as an ADP. Id. ¶ 35. Stating that Plaintiff "did not qualify as an ADP because it did not support the original petitions," the ITC denied Nan Ya's request for certification. Id. ¶ 37.

Plaintiff challenges the validity and constitutionality of the Commission's and CBP's application of the CDSOA to Nan Ya. In Count 1 of the Second Amended Complaint, Plaintiff claims that the ITC's determination not to include Nan Ya on the list of potential ADPs and Customs' refusal to provide CDSOA distributions to Nan Ya were inconsistent with the CDSOA, not supported by substantial evidence, and otherwise not in accordance with law. Sec. Am. Compl. ¶ 44. In Counts 2 and 3, Plaintiff challenges

on First Amendment grounds the provision in the CDSOA that, with respect to parties

who were not petitioners, confines benefits to parties who were in support of a petition.

19 U.S.C. §§ 1675c(b)(1), (d)(1) ("the petition support requirement").  Plaintiff brings its

First Amendment challenge to the petition support requirement both facially and on an

as-applied basis.  Sec. Am. Compl. ¶¶ 45-51.  In Counts 4 and 5, Plaintiff challenges the

petition support requirement, both facially and as applied to Nan Ya, on Fifth

Amendment equal protection grounds.  Id. ¶¶ 52-57.  In Count 6, Plaintiff challenges the

petition support requirement as impermissibly retroactive in violation of the Fifth

Amendment due process guarantee on the ground that Defendants based eligibility for

ADP status, and thus eligibility for disbursements, on past conduct.  Id. ¶ 59.  Finally, in

Count 7, Plaintiff claims the petition support requirement was satisfied by Nan Ya's

support for the continuation of the antidumping orders during the ITC's five-year review

("Sunset Review") of those orders.  Id. ¶ 61.

## A.  Plaintiff's Statutory Challenges Must Be Dismissed

Nan Ya claims in Count 1 that the ITC and Customs violated the CDSOA by

denying Nan Ya disbursements thereunder.  Id. ¶ 44.  In a related context, Plaintiff

claims in Count 7 that Nan Ya qualified under the CDSOA as a party in support of the

petition because it "expressed support for the continuation of the orders during the

Commission's five-year review of such orders, which is the functional equivalent of

supporting the petition for the five-year renewal period."  Id. ¶ 61.  Because we exercise

jurisdiction over Plaintiff's statutory claims according to 28 U.S.C. § 1581(i), we review

these claims as provided in section 706 of the Administrative Procedure Act, 5 U.S.C.

§ 706 (2006).  28 U.S.C. § 2640(e).  Under this standard, the court must hold unlawful

agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law . . . ."  5 U.S.C. § 706(2)(A).  We conclude that Plaintiff has

failed to allege facts upon which the court could conclude that the ITC or Customs acted

unlawfully according to this standard.

Nan Ya could have obtained from the ITC a designation of status as a potential

ADP only if it qualified as a "petitioner" or, in the alternative, as a "party in support of the

petition."  19 U.S.C. § 1675c(b)(1)(A).  Nan Ya could qualify as a "party in support of the

petition" only if it indicated "support of the petition by letter or through questionnaire

response."  Id. § 1675c(d)(1).  To prevail on its statutory claims against the

Commission, Plaintiff must plead facts under which we could conclude that the ITC, in

omitting Nan Ya from its lists of potential ADPs, acted arbitrarily or capriciously, abused

its discretion, or otherwise acted contrary to law.  For the reasons presented below, we

conclude that Nan Ya has failed to plead such facts.  Therefore, we will dismiss, for

failure to state a claim on which relief can be granted, all statutory claims brought

against the ITC, as stated in Counts 1 and 7 of the Second Amended Complaint.

### 1.  The ITC Did Not Err in Declining to Recognize Nan Ya as a "Petitioner" under the CDSOA

Nan Ya was among a group of domestic producers that filed, on April 2, 2009, a

petition seeking imposition of antidumping duties on PSF but sought antidumping duties

only as to Korea, not Taiwan.  Sec. Am. Compl. ¶¶ 21, 22; see Certain Polyester Staple

Fiber from Korea and Taiwan, 64 Fed. Reg. 17,414 (USITC Apr. 9, 2009).  Plaintiff

admits that it "withdrew as a petitioner" as to Korea on May 4, 1999.  Sec. Am. Compl. ¶

22.  The CDSOA provides that a party that "was a petitioner . . . with respect to which

an antidumping duty order . . . has been entered" potentially may receive ADP status.

19 U.S.C. § 1675c(b)(1)(A).  On these facts, we cannot conclude that the ITC erred by

not recognizing Nan Ya as a "petitioner" within the meaning of the CDSOA.

Under the antidumping statute, a "petitioner" is an interested party who files, on

behalf of a domestic industry, a petition "which alleges the elements necessary for the

imposition of the duty imposed by section 1673 of this title, and which is accompanied

by information reasonably available to the petitioner supporting those allegations."  Id.

§ 1673a(b)(1), (b)(2).  Those "elements," as set forth in § 1673, are that a class or kind

of foreign merchandise is being, or is likely to be, sold in the United States at less than

fair value, and that imports of that merchandise are causing or threatening to cause

material injury to a domestic industry or are materially retarding establishment of a U.S.

industry.  A "petitioner," therefore, in alleging the elements required for the imposition of

an antidumping duty, is, as a general matter, a party who seeks to have an antidumping

duty imposed on imports of the foreign merchandise that is the subject of the petition.[4]

It follows that a party who withdraws from a petition effectively has served public notice

that it has withdrawn its previous support for the imposition of antidumping duties or

other relief.

The CDSOA makes no distinction between the benefits it makes available to

parties who were "petitioners" and those who were "in support of the petition."

19 U.S.C. § 1675c(b)(1)(A), (d).  What these two groups have in common is that they

---

[4] A petition may result in relief from dumped imports through means other than an antidumping duty order, e.g., a suspension agreement.  See 19 U.S.C. § 1673c(b), (c).

were in support of a measure affording relief from the imports alleged to be sold at less than fair value, which relief, in the typical case, will take the form of an order imposing antidumping duties.  Only if such an antidumping duty order is imposed may CDSOA disbursements eventually occur.  Thus, in awarding benefits, the statute draws a clear distinction between those parties who were in support of the imposition of antidumping duties and those who were not.  Because Nan Ya withdrew its support for the imposition of antidumping duties on PSF imports from Korea (or, for that matter, any alternate form of relief from these imports) by its act of withdrawing from the petition, we cannot conclude that the ITC abused its discretion or otherwise acted contrary to law in not recognizing Nan Ya as a "petitioner" under the CDSOA as to the order on Korea.  Nan Ya, furthermore, has alleged no facts from which we could conclude that the ITC acted arbitrarily or capriciously, such as facts indicating that Nan Ya was treated differently than other parties who withdrew from a petition or that the ITC failed to consider all relevant factors.  See 33 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 8334 (3d ed. 1998).

### 2.  The ITC Did Not Err in Declining to Recognize Nan Ya as a "Party in Support of the Petition" under the CDSOA

In claiming that the ITC unlawfully determined that Nan Ya did not qualify for ADP status as a party in support of the petition, Plaintiff alleges that "there is evidence of Nan Ya's support within the record of the original investigation in the form of testimony of Brad Dutton, a Senior Account Manager for Nan Ya, in support of the petition."  Sec. Am. Compl. ¶ 41.  Plaintiff attached to its complaint a transcript of

testimony Mr. Dutton gave before the ITC at a hearing on April 26, 1999.  Id. Ex. 1.  This

allegation is insufficient to establish Nan Ya's eligibility for CDSOA benefits.

The CDSOA allowed a party such as Nan Ya to qualify for potential

disbursements either as a petitioner or as a party in support of a petition.  See

19 U.S.C. § 1675c(b)(1)(A).  When Mr. Dutton gave his testimony, Nan Ya was still a

petitioner, Nan Ya's withdrawal having occurred eight days later.  As we discussed

above, a petitioner is, by definition, a party who is in support of the imposition of

antidumping duties.  Because the Dutton testimony occurred while Nan Ya was still a

petitioner, and prior to Nan Ya's withdrawal from the petition, that testimony cannot

serve as an independent basis upon which Nan Ya could have qualified for CDSOA

benefits as a party "in support of the petition" as to Korea within the meaning of

§ 1675c(b)(1)(A).  Moreover, the transcript of the Dutton testimony does not state that

Nan Ya supports the petition, either as to Korea or Taiwan.  Instead, Mr. Dutton's

testimony addresses alleged injury to Nan Ya from imports of PSF.  Sec. Am. Compl.

Ex. 1, at 27-30.

Plaintiff also points to "a post-hearing brief filed by petitioner's counsel which

asserts that Nan Ya's interest is as a domestic producer in support of the petition," an

excerpt from which Plaintiff also attached as an exhibit to the complaint.  Sec. Am.

Compl. ¶ 41 & Ex. 2.  As to Korea, this allegation fails for precisely the same reason as

the allegation concerning the Dutton testimony, i.e., the brief was filed with the ITC on

April 29, 1999, just before Nan Ya withdrew from the petition.  As to Korea and Taiwan,

the excerpt from Nan Ya's brief does not affirmatively declare support for the petition.

Rather, it states that Nan Ya's "operations have not been shielded from the adverse impact of the subject imports" and that "notwithstanding Nan Ya America's ownership by a subject Taiwanese producer, Nan Ya's interest is as a domestic producer." Id. Ex. 2, at 9.

Even if we were to presume that the Dutton testimony or the brief constituted support for the petition, we still would conclude that these actions do not satisfy the petition support requirement.  Plaintiff admits that on January 20, 2000, during the final phase of the ITC's injury investigation, "it filed a U.S. producer questionnaire taking no position with respect to support for the petitions against Korea and Taiwan."  Sec. Am. Compl. ¶ 23.  As we have stated previously, the plain language of § 1675c(d)(1) requires affirmative support of a petition.  Ethan Allen Global, Inc. v. United States, 36 CIT ___, ___, 816 F. Supp. 2d 1330, 1337 (2012).  Anything other than an affirmative statement of support fails to satisfy the statute.  Here, in responding that it takes "no position" on the subject petition, Nan Ya affirmatively declined to support the petition, either as to Korea or Taiwan.  Nan Ya thus negated any prior expression of support that it may have made. [5]

Plaintiff does not allege that Nan Ya, having declined in that questionnaire response to take a position in support of the petition, made any further communication to the ITC in support of the petition, prior to the issuance of the antidumping duty order on PSF from Korea.  Instead, Plaintiff alleges only that it provided "financial support to

_____

[5] In opposing dismissal, Plaintiff states that it supported the petition in an April 14, 2009 questionnaire response to the ITC.  Pl.'s Opp'n to ITC Mot. 19, ECF No. 51.  This allegation does not appear in the complaint.  Even if it did, it still would fail because of Nan Ya's later expression of no position on the petition.

petitioners' counsel in the original investigation," Sec. Am. Compl. ¶ 43 & Ex. 3, and expressed support for the continuation of the antidumping duty orders in a five-year sunset review under 19 U.S.C. § 1675(c), id. ¶¶ 31, 60-61.  Neither of these actions qualified Nan Ya as an ADP.  The CDSOA provides that the list the ITC forwards to Customs is to include those parties "that indicate support of the petition by letter or through questionnaire response."  19 U.S.C. §1675c(d)(1).  As this Court previously has held, providing financial support to a petitioner does not enable a person to obtain ADP status under the CDSOA as a party in support of the petition.  Tampa Bay Fisheries, Inc. v. United States, 36 CIT __, __, 825 F. Supp. 2d 1331, 1340-41 (2012).  As this Court also has held, support for an already-issued antidumping duty order in a five-year "sunset" review is not the equivalent of support for a petition under the CDSOA.  United Synthetics, Inc. v. United States, 36 CIT __, __, Slip Op. 12-52, at 9-11 (Apr. 20, 2012).

In summary, we conclude that Plaintiff has failed to plead facts from which we may conclude that the ITC acted arbitrarily, capriciously, in excess of its discretion, or otherwise contrary to law, when it denied Nan Ya ADP status as a party in support of the petition.

### 3.  Plaintiff Fails to State a Statutory Claim Against Customs on which Relief Can Be Granted

Plaintiff claims that Customs violated the CDSOA by failing to include Nan Ya in CDSOA distributions.  Sec. Am. Compl. ¶ 6 ("Nan Ya challenges . . . Customs' failure to make a distribution to Nan Ya in FY 2007 and FY 2006 under the CDSOA.").  Eligibility to participate in a distribution, however, is limited to those parties appearing on the list of potential ADPs prepared by the Commission.  Paragraph (1) of 19 U.S.C. § 1675c(d)

requires the Commission to prepare a list of potential ADPs, while paragraph (2) directs Customs to publish "the list of affected domestic producers potentially eligible for the distribution based on the list obtained from the Commission under paragraph (1)" and states that Customs must request a certification of eligibility "from each potentially eligible affected domestic producer."   Paragraph (3) of section 1675c(d) requires Customs to make distributions "based on the certifications described in paragraph (2)." Customs, therefore, lacked authority to include Nan Ya, a party that the ITC determined not to qualify as an ADP, in its distributions of disbursements under the CDSOA. Therefore, we must dismiss, for failure to state a claim on which relief can be granted, all statutory claims Plaintiff brings against Customs, as stated in Counts 1 and 7 of the Second Amended Complaint.

### B.  Plaintiff's Constitutional Challenges Must be Dismissed

In Counts 2 through 5, Plaintiff brings facial and as-applied challenges to the petition support requirement of the CDSOA under the First Amendment and the Fifth Amendment's equal protection guarantee.   Sec. Am. Compl. ¶¶ 45-47.   In Count 6, Plaintiff challenges the petition support requirement as impermissibly retroactive under the Fifth Amendment due process guarantee.   Id. ¶ 58-59.   We conclude that the First Amendment and equal protection claims must be dismissed as foreclosed by binding precedent.   We reject Plaintiff's due process claims because we conclude that the petition support requirement is not impermissibly retroactive.

**1.  Plaintiff's First Amendment and Equal Protection Facial Challenges
to the Petition Support Requirement Are
Foreclosed by Binding Precedent**

In Count 3, Plaintiff claims that the petition support requirement of the CDSOA violates the First Amendment on its face because it compels speech.  Sec. Am. Compl. ¶ 51.  Plaintiff further claims that the CDSOA engages in impermissible viewpoint discrimination by conditioning receipt of a government benefit on a private speaker's expressing a specific viewpoint, i.e., expression of support for an antidumping petition, and is therefore an unconstitutional restriction on speech.  Id. ¶ 50.

In Count 5, Plaintiff raises a facial challenge to the CDSOA, claiming that the petition support requirement violates the equal protection guarantee of the Fifth Amendment.  Id. ¶ 56.  Plaintiff claims that the CDSOA creates a classification infringing on Nan Ya's fundamental right to free speech that is not narrowly tailored to a compelling government objective.  Id.  Plaintiff also contends that the CDSOA impermissibly discriminates between Plaintiff and other domestic producers who expressed support for the petition.  Id. ¶ 57.

The Court of Appeals rejected analogous claims challenging the petition support requirement in SKF, in which it upheld the petition support requirement under the First Amendment and under the Fifth Amendment's equal protection guarantee.  SKF, 556 F.3d at 1360 (stating that the "Byrd Amendment is within the constitutional power of Congress to enact, furthers the government's substantial interest in enforcing the trade laws, and is not overly broad."); id. at 1360 n.38 ("For the same reason, the Byrd Amendment does not fail the equal protection review applicable to statutes that

disadvantage protected speech."); id. at 1360 ("Because it serves a substantial

government interest, the Byrd Amendment is also clearly not violative of equal

protection under the rational basis standard.").  Plaintiff's facial First Amendment and

equal protection challenges to the CDSOA, therefore, are foreclosed by the holding in

SKF, and those challenges must be dismissed for failure to state a claim on which relief

can be granted.

       Plaintiff argues that SKF is no longer good law because the decision of the Court

of Appeals in SKF to uphold the petition support requirement using an intermediate level

of scrutiny, the "Central Hudson" test, was implicitly overturned by a recent decision of

the U.S. Supreme Court, Snyder v. Phelps, 131 S. Ct. 1207 (2011).  Pl.'s Opp'n to ITC

Mot. at 12 (citing Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,

447 U.S. 557, 564 (1980)).  Plaintiff construes Snyder to hold that all speech on matters

of public concern "is entitled to maximum First Amendment protection" and views

responses to the ITC's questionnaires as speech on a matter of public concern.  Id.

at 13.  Snyder, however, does not support a conclusion that SKF incorrectly applied only

an intermediate level of First Amendment scrutiny.  Snyder set aside as contrary to the

First Amendment a jury verdict imposing substantial state law tort liability on persons

who picketed at a military funeral.  Snyder, 131 S. Ct. at 1213-14, 20.  The case does

not hold that all speech addressing matters of public concern, such as a position taken

in antidumping litigation, must receive a level of judicial scrutiny higher than that applied

in SKF.  See Standard Furniture Mfg. Co. v. United States, 36 CIT ___, ___, 823 F.

Supp. 2d 1327, 1338-39 (2012) (concluding that <u>Snyder</u> did not compel a First

Amendment analysis differing from that which was applied in <u>SKF</u>).

Plaintiff proceeds to bring the court's attention to <u>Sorrell v. IMS Health Inc.</u>,

131 S. Ct. 2653 (2011), as additional authority to invalidate the level of scrutiny applied

to the CDSOA by the Court of Appeals in <u>SKF</u>.  Plaintiff argues:

> <u>Sorrell</u> establishes that statutes which impose content-based burdens,
> including viewpoint-based <u>burdens</u>, are subject to the same strict scrutiny
> as those which impose content-based <u>bans</u>.  Therefore, consistent with the
> <u>Sorrell</u> decision, the CDSOA should be subject to the same heightened
> scrutiny that was imposed by the Supreme Court upon a statute that
> produced a content-based burden on protected speech. Nan Ya submits
> that the CDSOA cannot withstand the heightened level of scrutiny because
> the law was not narrowly tailored to serve a compelling government
> interest.

Pl.'s Opp'n to ITC Mot. at 13-14.

In a line of recent cases, this Court has rejected the argument that <u>Sorrell</u>

implicitly overturned <u>SKF</u>.  See <u>Ashley Furniture Indus., Inc. v. United States</u>, 36 CIT

___, ___, Slip Op. 12-29 at 10-13 (Mar. 6, 2012); <u>NSK Corp. v. United States</u>, 36 CIT

___, ___, 821 F. Supp. 2d 1349, 1356 (2012); <u>Pat Huval Rest. & Oyster Bar, Inc. v.</u>

<u>United States</u>, 36 CIT ___, ___, 823 F. Supp. 2d 1365, 1376 (2012); <u>Standard Furniture</u>

<u>Mfg. Co.</u>, 36 CIT ___, ___, 823 F. Supp. 2d at 1340-42; <u>Furniture Brands Int'l v. United</u>

<u>States</u>, 36 CIT ___, ___, Slip Op. 12-20 at 12-13 (Feb. 17, 2012).  In those cases we

ruled that nothing in the Supreme Court's holding in <u>Sorrell</u> requires that constitutional

claims akin to those raised by Plaintiff must survive dismissal under the <u>SKF</u> precedent.

Although reaching opposite First Amendment outcomes, <u>Sorrell</u> and <u>SKF</u> analyze

dissimilar statutes, which vary considerably in the nature and degree of the effect on

expression and, most significantly, differ in purpose.  The Vermont statute at issue in

Sorrell authorized civil remedies against those selling or using certain information that

identified the prescriber of prescription drugs, engaged in content-discrimination, and, in

practical application, also discriminated by viewpoint.  Sorrell, 131 S. Ct. at 2660.  The

CDSOA does not have as a stated purpose, or even as an implied purpose, the

intentional suppression of expression.  SKF, 556 F.3d at 1351-52.

We conclude that Plaintiff's facial constitutional challenges to the CDSOA are

foreclosed by the holding in SKF, and these challenges must be dismissed for failure to

state a claim on which relief can be granted.

### 2.  Plaintiff's First Amendment As-Applied Challenge Must be Dismissed

In Count 2, Plaintiff asserts an as-applied constitutional challenge under the First

Amendment, claiming specifically that the CDSOA discriminates against those, such as

Nan Ya, who did not express a specific viewpoint (support for the antidumping petition),

and is, therefore, an unconstitutional restriction on speech.  Sec. Am. Compl. ¶ 46-47.

Nan Ya argues that because of its participation and cooperation in the ITC investigation

in support of the petition, the ITC's denial of ADP status to Nan Ya was impermissibly

based solely on Nan Ya's expression in the final phase questionnaire, where Nan Ya

took no position with regard to the petition.  Pl.'s Opp'n to ITC Mot. at 10-11.  Nan Ya

also contends that it "actively promoted the government's enforcement of the

antidumping laws by assisting in the conduct of the antidumping proceeding and the

Sunset review and at no point took any action, or made any statement in opposition to

the petition."  Id. at 10.  In particular, Nan Ya argues that it supported the petition

through its response to the preliminary phase questionnaire and to the continuation of the antidumping duty orders in the Sunset review.  Id. at 10-11.

Nan Ya submits that the Court of Appeals in SKF did not rule on such facts, and that should the court's interpretation of the CDSOA in SKF be applied to the facts in the instant case, the outcome would be an as-applied violation of the First Amendment.  Id. at 9-10.  Nan Ya would thus have us rule that the ITC's application of the CDSOA violated the First Amendment to the extent the ITC based its determination that Plaintiff did not qualify as a potential ADP on Plaintiff's failing to indicate support of the petition by letter or questionnaire response.  Id.

Plaintiff's argument again misinterprets SKF, which does not hold that the CDSOA would violate the First Amendment if applied to deny CDSOA benefits based solely on a party's failing to indicate support for the petition by letter or questionnaire response.  SKF, in fact, holds the opposite.  The Court of Appeals determined that the appropriate First Amendment legal standard was the standard applying to regulation of commercial speech.  It then concluded that the CDSOA, although requiring a non-petitioner, such as SKF, to express support for the petition in order to acquire ADP status, met that standard.  SKF, 556 F.3d at 1354-55.  The Court of Appeals did state, as Plaintiff highlights, that "[t]he language of the Byrd Amendment is easily susceptible to a construction that rewards actions (litigation support) rather than the expression of particular views" and that "a limiting construction of the statute is necessary to cabin its scope so that it does not reward a mere abstract expression of support."  Id. at 1353; Pl.'s Opp'n to ITC Mot. at 8.  However, those statements were in the context of

discussing statutory language as an alternative to previous discussion in the opinion on

congressional purpose.  They were part of the analysis by which the Court of Appeals

subjected the CDSOA to First Amendment standards for the regulation of commercial

speech.  They do not signify a holding that the First Amendment prohibits a government

agency implementing the CDSOA from conditioning ADP status on the expression of

support for a petition.  See Furniture Brands I, 35 CIT at ___, 807 F. Supp. 2d at 1311-

12 (rejecting the argument that SKF modified the meaning of the petition support

requirement).

   Plaintiff's as-applied First Amendment challenges, therefore, are foreclosed by

the holding in SKF.  Plaintiff has failed to allege any material facts that would distinguish

these claims from the binding precedent established by that holding, and, therefore,

Nan Ya's as-applied challenge must be dismissed.

### 3.  Plaintiff's Fifth Amendment Equal Protection As-Applied Challenges Must Be Dismissed

   In Count 4, Plaintiff claims that the CDSOA impermissibly discriminates between

Plaintiff and other domestic producers who expressed support for the underlying

antidumping petition in that the petition support requirement, as applied to Nan Ya, was

not rationally related to a legitimate governmental purpose and thereby contravened the

equal protection guarantee of the Fifth Amendment.  Sec. Am. Compl. ¶ 53-54.  See

also Pl.'s Opp'n to ITC Mot. at 11-12.

   Plaintiff has alleged no facts that distinguish its equal protection claims from the

equal protection claim addressed, and rejected, in SKF.  The Court of Appeals held that

the petition support requirement of the CDSOA does not abridge the equal protection

guarantee, holding that the petition support requirement is rationally related to the Government's legitimate purpose of rewarding parties who promote the Government's policy against dumping.  SKF, 556 F.3d at 1360.  SKF reasoned that it was "rational for Congress to conclude that those who did not support the petition should not be rewarded."  Id. at 1359.  For these reasons, relief cannot be granted on Plaintiffs' as-applied equal protection claims, which must be dismissed.

### 4.  The Petition Support Requirement Does Not Violate the Due Process Clause Due to Retroactivity

In Count 6 of the Second Amended Complaint, Plaintiff claims that the CDSOA petition support requirement impermissibly bases eligibility for CDSOA disbursements on Plaintiff's past conduct, thereby creating a retroactive consequence in violation of the Due Process Clause of the Fifth Amendment.  Plaintiff claims that the CDSOA is retroactive because Plaintiff's "prior act of answering a domestic producer questionnaire was given a 'quality or effect' which it previously did not have when it was performed." Pl.'s Opp'n to ITC Mot. at 15.

This Court has recently ruled on retroactivity claims essentially identical to those raised by Plaintiff.  See New Hampshire Ball Bearing v. United States, 36 CIT ___, ___, 815 F. Supp. 2d 1301, 1306-10 (2012); see also Schaeffler Group USA, Inc. v. United States, 36 CIT ___, ___, 808 F. Supp. 2d 1358, 1363-64 (2012).  We concluded that "the retroactive reach of the petition support requirement in the CDSOA is justified by a rational legislative purpose and therefore is not vulnerable to attack on constitutional due process grounds."  New Hampshire Bearing, 36 CIT at ___, 815 F. Supp. 2d at 1309.  We reasoned that "it would not be arbitrary or irrational for Congress to conclude

that the legislative purpose of rewarding domestic producers who supported antidumping petitions . . . would be 'more fully effectuated' if the petition support requirement were applied both prospectively and retroactively." Id. (quoting Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 730-31 (1984)).   We conclude, therefore, that Congress did not violate Plaintiff's Fifth Amendment due process rights in basing potential eligibility for CDSOA disbursements on a decision whether to support the petition that Plaintiff made prior to the enactment of the CDSOA. Based on this conclusion, we will dismiss the due process claim in Count 6 of the Second Amended Complaint for failure to state a claim upon which relief can be granted.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's Second Amended Complaint for failure to state a claim are hereby granted.[6]   Judgment dismissing this action will be entered accordingly.

        /s/ Leo M. Gordon
Judge Leo M. Gordon

Dated:  July 12, 2012
          New York, New York

---

[6] Because we are dismissing Plaintiff's Second Amended Complaint for failure to state a claim, we will deny Plaintiff's motion to complete and supplement the administrative record, ECF No. 38, as moot.

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NAN YA PLASTICS CORPORATION, AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, UNITED STATES CUSTOMS AND BORDER PROTECTION, DAVID V. AGUILAR (ACTING COMMISSIONER, UNITED STATES CUSTOMS AND BORDER PROTECTION), UNITED STATES INTERNATIONAL TRADE COMMISSION, AND DEANNA T. OKUN (CHAIRMAN, UNITED STATES INTERNATIONAL TRADE COMMISSION),<br><br>            Defendants. | Before: Gregory W. Carman, Judge<br>       Timothy C. Stanceu, Judge<br>       Leo M. Gordon, Judge<br><br>Court No. 08-00138 |

**JUDGMENT**

Upon consideration of the Second Amended Complaint; the motions to dismiss for failure to state a claim upon which relief can be granted filed by Defendants U.S. International Trade Commission, and the United States and U.S. Customs and Border Protection; all other papers and proceedings had in this action; and in conformity with the court's Opinion issued on this date, it is hereby

**ORDERED** that Defendants' motions to dismiss are granted; it is further

**ORDERED** that Plaintiff's motion to complete and supplement the administrative record, ECF No. 38, is denied as moot; and it is further

**ORDERED** that this action is dismissed.

                              _____/s/ Leo M. Gordon_____
                                Judge Leo M. Gordon

Dated:  July 12, 2012
       New York, New York